# EXHIBIT 1

 

**SENT VIA CERTIFIED U.S. MAIL**

June 20, 2018

Scott K. Falk, Chief Counsel
Office of the Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave. NW
Washington, DC 20229

Chief Patrol Agent Henry Rolon
Deputy Chief Patrol Agent David BeMiller
U.S. Customs & Border Protection, Spokane Border Patrol Sector Headquarters
10710 N Newport Hwy
Spokane, WA 99218

Office of the General Counsel (Copy)
U.S. Department of Homeland Security
245 Murray Lane, SW
Mail Stop 0485
Washington, DC 20528-0485

**Re: Notification of Incident and Claim for Damages under the Federal Tort Claims Act**
**Andres Sosa Segura,** ▇▇▇▇▇

Dear Mr. Falk,

We represent Andres Sosa Segura in his claim against the United States, specifically the U.S. Border Patrol (USBP), an agency of U.S. Customs and Border Protection (CBP), a subdivision of the U.S. Department of Homeland Security (DHS). Enclosed please find the Claim for Damage, Injury, or Death (Standard Form 95) (Exhibit A) and Mr. Sosa's authorization statement (Exhibit B), as well as additional exhibits supporting Mr. Sosa's claim (Exhibits C and D).

Pursuant to 28 U.S.C. § 2675(a) and 28 C.F.R. § 14.2(a), we hereby provide notification of an incident that occasions liability under the Federal Tort Claims Act (FTCA), and demand for monetary damages in the amount of $75,000 resulting from Border Patrol agents having committed the torts of: (1) false arrest; and (2) false imprisonment.

The Border Patrol agents unlawfully restrained and detained Mr. Sosa for hours, without any valid grounds for interfering with his liberty and freedom of movement, and did so based on

18

Notification of Incident and Claim for Damages Under the Federal Tort Claims Act
Andres Sosa Segura,

legally prohibited grounds. As a direct and proximate result of the agents' commission of false arrest and false imprisonment, Mr. Sosa has suffered both economic losses and personal injury.

### I.   CBP's Unlawful Restraint and Detention of Mr. Sosa

Mr. Sosa brings this claim regarding his hours-long unlawful restraint and detention by Border Patrol agents employed by U.S. Customs and Border Protection, in connection with an incident that began at the Spokane Intermodal Center on Tuesday, July 25, 2017. The Intermodal Center is located at 221 W. First Ave., Spokane, WA 99201, and contains a Greyhound bus station.

Mr. Sosa is a resident of Underwood, Washington, where he lives with his U.S. citizen wife and four U.S. citizen children (including one step-child). He has traveled regularly on the Greyhound bus line between Portland, Oregon, near his home, and Montana, where he works. Mr. Sosa is fluent in Spanish and speaks some limited English. Prior to the date of the incident, Mr. Sosa had been detained by ICE and placed in removal proceedings. At the time of the incident in Spokane, Mr. Sosa had been granted release on bond by the immigration court. He continues to be on release under conditions imposed by the immigration court pending his immigration proceedings.

On July 25, 2017, Mr. Sosa's bus arrived at the Spokane Intermodal Center at approximately 11:00 A.M. He was in the process of transferring to the Greyhound bus going to Portland, Oregon from the Spokane station, in order to get back to his home without delay. Mr. Sosa was the only Latino-appearing passenger on his bus.

When the bus stopped at the station, two uniformed Border Patrol agents waited outside the bus doors. Mr. Sosa exited the bus with the other passengers, but once he was outside, the agents told him that they needed to talk to him. They positioned their bodies so that he had no choice but to move in the direction they were directing him. Of all the passengers exiting the bus, Mr. Sosa was the only passenger pulled aside by the agents.

The shorter of the two agents (hereinafter Agent 1) asked Mr. Sosa, "Do you have papers? Where are you from?" Mr. Sosa understood these questions to be an inquiry into his immigration status. Mr. Sosa inquired why the officer was asking him the question. Agent 1 again asked Mr. Sosa if he had papers and where he was from, and touched his gun.

Mr. Sosa then asserted his right to remain silent. He presented Agent 1 with a "know-your-rights" card that he had received from his immigration attorney, who had instructed him to remain silent and present the card to any law enforcement authorities if ever stopped. The card stated in English and Spanish that Mr. Sosa wanted to talk to an attorney before answering any questions; and that he would not speak, answer questions about his immigration status, respond to any accusations, waive any legal rights, or consent to a search until first obtaining the advice of an attorney. A copy of the card is attached as Exhibit C.

Notification of Incident and Claim for Damages Under the Federal Tort Claims Act
Andres Sosa Segura,

Agent 1 looked at the card and then said that he needed to talk to Mr. Sosa, who he claimed was "illegal." Agent 1 ordered Mr. Sosa to follow him; both agents continued to position their bodies to prevent Mr. Sosa from leaving.

The agents took Mr. Sosa to the station's parking lot, where their vans were parked. This was distressing to Mr. Sosa because he believed that he was being subjected to further questioning based on asserting his rights. Mr. Sosa was also distressed that Agent 1 apparently viewed the "know-your-rights" card as a basis for assuming Mr. Sosa was "illegal," contrary to his lawyer's advice to show the card if law enforcement stopped him.

After the agents led Mr. Sosa outside to the vans, and despite the fact that Mr. Sosa had indicated a desire to have an attorney present before any questioning, Agent 1 asked Mr. Sosa where he was from. Frightened, Mr. Sosa responded, "Mexico." Mr. Sosa explained that he had been released on bond from immigration detention, and lifted up his pant leg to show the agents his ankle monitor. Agent 1 then said that he would deport Mr. Sosa. He repeated this statement again several times.

Agent 1 ordered Mr. Sosa to provide his identification. Mr. Sosa gave the agent his Washington state driver's license. The license was, and continues to be, valid. The agent took Mr. Sosa's bag away, placed Mr. Sosa in the back of his vehicle behind a grate, and again repeated that he would deport Mr. Sosa.

Mr. Sosa was taken by the agents to a facility approximately an hour away from the Spokane bus station. At the facility, the agents fingerprinted him and placed him in a cell. He was not permitted to make a phone call. After some time, the agents checked his records, and verified that he had been released from immigration detention on bond. An agent at the station repeated that he knew that Mr. Sosa was "illegal" because of the know-your-rights card that Mr. Sosa had presented to him.

After having detained Mr. Sosa for hours, the agents let him out of the cell, and let him call his wife. He was driven back to the Spokane Intermodal Center, and was released at or around 3:30 P.M. All of the buses to Portland had departed for the day, so Mr. Sosa waited for approximately five hours for his wife to drive approximately three hundred miles to Spokane, and pick him up and return him to his home in Underwood.

As a result of his unlawful treatment by Border Patrol agents, Mr. Sosa suffered humiliation, emotional distress, and other damages. He also suffered property loss for the bus fare he had paid for and was prevented from using, and costs of transportation to his home in Underwood, Washington.

**II.    CBP Is Liable for False Arrest and False Imprisonment under the Federal Tort Claims Act**

The Border Patrol agents committed false arrest and false imprisonment of Mr. Sosa. They restrained him, restricted or terminated his freedom of movement, and compelled him to move without legal authority. Restraint and imprisonment can be established by threat of force or by

3

20

Notification of Incident and Claim for Damages Under the Federal Tort Claims Act
Andres Sosa Segura,

conduct reasonably implying that force will be used. Here, the agents blocked Mr. Sosa's movement toward his next bus, satisfying the test for restraint or detention that is an element of false arrest and false imprisonment.

Mr. Sosa was simply trying to return home to his family at the time the agents illegally detained and questioned him on July 25, 2017. With absolutely no basis to suspect him of violating federal immigration laws, much less of any crime, uniformed and armed law enforcement agents pulled Mr. Sosa aside. The agents' unlawful restraint began at this point, as their conduct reasonably implied that Mr. Sosa was obligated to comply, and that in fact, force would be used if Mr. Sosa did not comply. The unlawful restraint continued when the agents demanded Mr. Sosa's papers and that he state his place of birth, and when one of the agents touched his gun while asking the questions. A reasonable person would view this as conduct implying force and would reasonably believe they were not free to leave at that point. This restraint and imprisonment are further confirmed by the fact that Mr. Sosa had been told by an attorney to show the card asserting his rights if he was ever stopped, and he did show the agents the card at that point.

The agents' lack of authority for the detention is evident in several ways. A person's assertion of their legal rights is a prohibited basis for detention. However, immediately after Mr. Sosa presented the know-your- rights card, Agent 1 accused Mr. Sosa of being "illegal" and informed him that further questioning was "needed." A display of the card provides no legal authority for detaining a person, nor does it provide a basis for a conclusion about someone's immigration status. In addition, a person's apparent race or ethnicity is not a valid basis for restraining them, and does not provide reasonable suspicion that the person is unlawfully present in the United States. Mr. Sosa, however, was the only Latino-appearing person who got off the bus, and he was the only one singled out for restraint, a demand for "papers," and questioning by the agents. The demand for "papers" demonstrates the agents were making the assumption Mr. Sosa was foreign-born based solely on his appearance, which is not valid legal authority for a restraint or detention.

The agents prolonged their unlawful restraint of Mr. Sosa by ordering him to "follow" them after he displayed the card, again with no valid legal authority for restraining him. The agents ordered him to a location outside the station and demanded to know where he was from. And the unlawful arrest was extended even though Mr. Sosa clearly demonstrated the ankle monitor device on his leg, making clear that he had already been placed in proceedings and released pursuant to a court order. Any reasonable person would believe in these circumstances that they were not free to leave, and they would also reasonably be fearful, as Mr. Sosa was, especially after the agent acted to instill fear by touching his gun, and then directing Mr. Sosa outside to the agents' vehicles. The agents left no doubt they were continuing to restrain Mr. Sosa when they stated several times they were going to deport him, and ordered him to give them his identification.

The unlawful restraint continued when the agents compelled Mr. Sosa to sit in the back of their official vehicle behind a grate, took his backpack away from him, transported him to a location an hour away from the bus station in Spokane, fingerprinted him, put him in a cell for a period of time, and drove him back to the Spokane bus station, arriving about 4.5 hours after the

Notification of Incident and Claim for Damages Under the Federal Tort Claims Act
Andres Sosa Segura,

initial contact by the Border Patrol agents. The restraint was also unnecessarily prolonged, and without legal authority, because the agents could have confirmed Mr. Sosa's status on bond by phone or other device without having to transport him to another location.

### III.    FTCA Damages

Damages are owed to Mr. Sosa for the entire period of his unlawful restraint. Compensation is also claimed for the agents having disrupted Mr. Sosa's entire day of travel. As a result of the unlawful restraint, Mr. Sosa was stranded in Spokane, without any other bus to take him home that day. Further, he was deprived of being able to use the bus ticket that he had purchased to go home. He had to wait in the Spokane Greyhound station for another four or five hours after the agents dropped him off, while his wife drove five hours from their home to Spokane to pick him up.

These traumatic events inflicted additional costs and significant additional stress on Mr. Sosa. The agents' conduct subjected Mr. Sosa to the humiliation of being singled out and accused of wrongdoing based on his race. Their conduct inflicted emotional distress, particularly when they disregarded their duty to honor Mr. Sosa's assertion of his legal rights. Once the agents refused to comply with those rights, it was only reasonable for Mr. Sosa to fear they might disregard other legal rules. He had to suffer the fear of not knowing whether they would make good on the threat to deport him, and the fear that he might be separated from his family for a prolonged period of time, without his family even knowing where he was. The incident made him fear authority and fear that asserting his rights again will result in more arbitrary detention. The incident has caused Mr. Sosa to experience fear and stress every time he has traveled on the bus, and the fear and stress are continuing. All of these forms of injury are part of the damages claimed under the FTCA.

Mr. Sosa has continued to ride the Greyhound bus, but has ongoing fear of another disruptive and stressful contact with Border Patrol agents. All of these fears contribute to the damages amount he claims.

Moreover, numerous other sources confirm the reasonableness of the emotional distress Mr. Sosa experienced. Media and other sources report particularly intimidating conduct by Border Patrol agents at the same Spokane Intermodal Center. Reports of such encounters describe armed agents (often with their hands on their guns while conducting questioning) interrogating passengers and demanding answers to additional questions or requesting to see "papers" from passengers of color, those who speak English with an accent, or those who indicate that English is not their primary language, even when the person being questioned states they were born in the United States or is a U.S. citizen. Passengers reasonably feel compelled to comply with the agents' demands, because they fear being detained for an unknown length of time, or at a minimum, fear that being delayed by the agents will mean losing the money spent on the ticket and having to buy another ticket, or being stranded mid-journey. These confrontations are distressing not only to the passengers of color who feel coerced and intimidated into answering the agents' questions, but also to other passengers who have witnessed the agents' conduct.

### IV.     Potential Constitutional Claims

In addition to the above-mentioned torts, the government's conduct may be characterized as violating several provisions of the federal and state constitutions: the right to free speech, to be free of unreasonable searches and seizures, to remain silent, to liberty, and to due process, under the First, Fourth, and Fifth Amendments of the U.S. Constitution, and under Article I, Sections 3, 5, 7, and 9 of the Washington State Constitution. Mr. Sosa's right to free speech was violated when the agents retaliated against him for presenting his "know your rights" card. The agents prolonged their restraint of him after he attempted to assert his rights pursuant to his attorney's advice. Continuing to detain him for asserting his rights and asking questions would chill any reasonable person from asserting their free speech rights. Mr. Sosa's speech was chilled, both by making him feel compelled to respond to the agents' persistent questioning at the time of the incident, and on a continuing basis, because he fears displaying the card will trigger a negative reaction from government officials.

The right to remain silent and the right to advice of counsel are key components of Mr. Sosa's Fifth Amendment rights, and the agents' conduct violated these rights because of their escalation of the detention after Mr. Sosa displayed the know-your-rights card. CBP's own documents confirm that Border Patrol agents interrogate and detain passengers who remain silent in response to the agents' questions, without any valid basis for the persistent questioning. If this case proceeds in court, Mr. Sosa may allege these constitutional violations in addition to the FTCA claims, seeking declaratory and/or injunctive relief as to those constitutional violations.

### V.     Conclusion

The elements of false arrest and false imprisonment are established by the government's conduct in unlawfully restraining Mr. Sosa on July 25, 2017. There was no lawful basis to detain him. On the other hand, the likelihood of prohibited racial profiling is confirmed by accounts of Border Patrol agents' confrontations with Greyhound passengers at the Spokane station and elsewhere[1], and by prior litigation by NWIRP and ACLU-WA against CBP over actions of its agents in the state of Washington. *See, Sanchez et al. v. United States Office of Border Patrol et al.,* Case No. 3:12−cv−05378−RJB (W.D. Wash.), a case involving allegations of racial profiling and failure to comply with the Fourth Amendment in vehicle checkpoints conducted by the Blaine Sector of CBP.

Mr. Sosa suffered damages as a result of the Border Patrol agents' tortious conduct. For these

---

[1] See Amy Wang, *In Montana, Border Patrol agent detains 2 U.S. citizens for Speaking Spanish*, The Seattle Times (May 20, 2018), *available at* https://www.seattletimes.com/nation-world/nation/in-montana-border-patrol-agent-detains-2-u-s-citizens-who-were-speaking-spanish/ (describing May 2018 incident in which a CBP officer from the Havre Sector in Montana questioned and detained two Latino-appearing U.S. citizens for speaking Spanish).

Notification of Incident and Claim for Damages Under the Federal Tort Claims Act
Andres Sosa Segura, ███████

reasons, we now submit the instant claim under the FTCA for compensation in the amount of $75,000.


Sincerely,

*Nancy L Talner*

Nancy Talner, WSBA No. 11196
Senior Staff Attorney
AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 5th Ave, Suite 630
Seattle, WA 98164
206-624-2184
talner@aclu-wa.org

Eunice Hyunhye Cho, WSBA No. 53711
Staff Attorney
AMERICAN CIVIL LIBERTIES UNION
OF WASHINGTON FOUNDATION
901 5th Ave, Suite 630
Seattle, WA 98164
206-624-2184
echo@aclu-wa.org

Matt Adams, WSBA No. 28287
Legal Director
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 2nd Avenue, Suite 400
Seattle, WA 98104-2244
Phone: (206) 957-8611
matt@nwirp.org

Glenda M. Aldana Madrid, WSBA No. 46987
Staff Attorney
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 2nd Avenue, Suite 400
Seattle, WA 98104-2244
Phone: (206) 957-8646
glenda@nwirp.org

Leila Kang, WSBA No. 48048
Staff Attorney
NORTHWEST IMMIGRANT RIGHTS PROJECT

Notification of Incident and Claim for Damages Under the Federal Tort Claims Act
Andres Sosa Segura, ███████

615 2nd Avenue, Suite 400
Seattle, WA 98104-2244
Phone: (206) 957-8608
leila@nwirp.org


Attached:
Exhibits A, B, C, and D

# EXHIBIT A

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| See attached | Andres Sosa Segura<br><br>See attached |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH<br>09/25/1981 | 5. MARITAL STATUS<br>Married | 6. DATE AND DAY OF ACCIDENT<br>07/25/2017    Tuesday | 7. TIME (A.M. OR P.M.)<br>11:00 A.M. |
|---|---|---|---|---|

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

Please see attached.

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

Please see attached.

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

Please see attached.

10. PERSONAL INJURY/WRONGFUL DEATH

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Please see attached.

11. WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Please see attached. | Please see attached. |

12. (See instructions on reverse). AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
|  |  |  |  |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side).<br>*Andres Sosa* | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE<br>5-7-2018 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001). |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

27

| INSURANCE COVERAGE |
|---|
| In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property. |

15. Do you carry accident Insurance? [ ] Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. [X] No

n/a

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? [ ] Yes [X] No    17. If deductible, state amount.

n/a

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).
n/a

19. Do you carry public liability and property damage insurance? [ ] Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). [X] No

n/a

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

**(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is <u>solely</u> for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**

# EXHIBIT B

I, Andres Sosa Segura, am represented by attorneys at the American Civil Liberties Union Foundation of Washington (ACLU-WA) and the Northwest Immigrant Rights Project (NWIRP). I authorize the ACLU-WA and NWIRP to submit a claim letter on my behalf to the Department of Homeland Security (DHS) and Customs and Border Protection (CBP), and any other government agency, requesting compensation for the events surrounding my detention by CBP and the harm that action caused.

5-7-2018
Dated

*Andres Sosa*
Andres Sosa Segura

# EXHIBIT C

## TO WHOM IT MAY CONCERN

Before answering any questions I want to talk to an attorney. I will not speak to anyone, answer any questions about my immigration status, respond to any accusations, waive any of my legal rights, or consent to any search of my person, papers, or property until I have first obtained the advice of an attorney.

## A QUIEN INTERESE

Antes de contestar cualquier pregunta, quiero hablar con un abogado. No voy a hablar con nadie, contestar ninguna pregunta acerca de mi estatus migratorio, renunciar a ninguno de mis derechos legales, o consentir a una búsqueda de mi persona, papeles, o propiedad hasta que primero yo haya obtenido el consejo de un abogado.

32

# EXHIBIT D

**U.S. Department of Homeland Security**  **Subject ID:** (b)(7)(E)  **Record of Deportable/Inadmissible Alien**

| Family Name (CAPS): SOSA-SEGURA, ANDRES | First | Middle | Sex: M | Hair: BLK | Eyes: BRO | Cmplxn |
|---|---|---|---|---|---|---|
| Country of Citizenship: MEXICO | Passport Number and Country of Issue | File Number / CASE No: (b)(7)(E) | Height: 66 | Weight: 155 | Occupation | |

US Address:

| Date, Place, Time, and Manner of Last Entry: Unknown Date, Unknown Time | Passenger Boarded at | FBI Number | ☐ Single  ☐ Divorced ☐ Married  ☐ Widower ☐ Separated |
|---|---|---|---|
| Number, Street, City, Province (State) and Country of Permanent Residence: MEXICO | | Method of Location/Apprehension: (b)(7)(E) | |
| Date of Birth: (redacted)  Age: (redacted) | Date of Action  AR ☒ | Location Code: SPW/COV  Form (Type and No.) Lifted ☐ Not Lifted ☐ | At/Near: (b)(6)(b)(7)(C)  Date/Hour: 07/24/2017 1411 |
| City, Province (State) and Country of Birth: MEXICO | | | |
| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry: Other | Status When Found |
| Date Visa Issued | Social Security Number | Length of Time Illegally in US: NOT APPLICABLE | |
| Immigration Record: NEGATIVE | Criminal Record: None Known | | |

Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children

Father's Name, Nationality, and Address, if Known | Mother's Present and Maiden Names, Nationality, and Address, if Known

| Monies Due/Property in US Not in Immediate Possession: None Claimed | Fingerprinted? ☐ Yes ☐ No | Systems Checks | Charge Code Word(s) |
|---|---|---|---|
| Name and Address of (Last)(Current) US Employer | Type of Employment | Salary: Hr | Employed from/to |

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

ARREST COORDINATES:

(b)(7)(E)

ASSISTING ASSETS:

(b)(7)(E)

(b)(6)(b)(7)(C)
CBP Technician

Alien has been advised of communication privileges _____ (Date/Initials) _____ (Signature and Title of Immigration Officer)

Distribution:

Received: (Subject and Documents) (Report of Interview)
Officer: (b)(6)(b)(7)(C)
on: _____ (time)
Disposition: Not in Custody
Examining Officer: _____

Form I-213 (Rev. 08/01/07) Y

| U.S. Department of Homeland Security | | Continuation Page for Form I213 |
|---|---|---|
| Alien's Name<br>SOSA-SEGURA, ANDRES | File Number<br>A(b)(6)(b)(7)(C)<br>Event No: (b)(7)(E) | Date |

| Signature (b)(6)(b)(7)(C) | Title CBP Technician |
|---|---|

1 of 1 Pages

Form I-831 Continuation Page (Rev. 08/01/07)