FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 22, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANDRES SOSA SEGURA,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | No. 2:19-cv-00219-SAB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

    Before the Court is Defendant's Motion to Dismiss, ECF No. 5. A hearing on the motion was held on November 20, 2019, in Yakima, Washington. Defendant was represented by Assistant United States Attorney John T. Drake and Vanessa R. Waldref. Plaintiff was represented by Jennifer Chung, Kenneth E. Payson, Aaron Korthuis, and Lisa Nowlin.

    Plaintiff Andres Sosa Segura is suing the United States for the alleged conduct of two United States Customs and Border Protection (CBP) officers who approached him at the bus station in Spokane and detained him without probable cause because he was Latino.

    Plaintiff is bringing claims under the Federal Tort Claims Act ("FTCA"), alleging state law claims of (1) False Arrest; (2) False Imprisonment; and (3)violation of the Washington Law Against Discrimination (WLAD). The United States asserts the WLAD claim must be dismissed because (1) the United States

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 1**

has not waived sovereign immunity for state civil rights torts under the FTCA and (2) Plaintiff fails to state a claim for relief under the WLAD because the United States does not own, operate, or exercise control over the Spokane Intermodal Center where the alleged encounter took place. Thus, the United States cannot be liable as a matter of law.

## Background Facts

The following facts are taken from Plaintiff's Complaint:

Plaintiff was traveling by bus from Portland, Oregon to Montana to go home to his family and had to transfer buses at the Spokane Intermodal Center, in Spokane, Washington. When he exited his bus to make the transfer, two CBP agents singled him out and pulled him aside. He believes it was because he is Latino. They began questioning him about his immigration status. Because Plaintiff had an immigration lawyer, he pulled out a card that he handed to the CBP officers. In sum, the card indicated that Plaintiff was invoking his Constitutional rights and that he wanted an attorney present before he answered questions.

The CBP officers ignored this and ordered Plaintiff to follow them outside to the parking lot where they continued to interrogate him. He told the agents he was from Mexico but had been released from a detention center and that he had a lawyer, and he showed him the ankle bracelet from the Immigration court.

Undeterred, the officers took Plaintiff to a detention facility an hour away, put him in a cell and took his phone away. After four hours passed, the CBP officers allowed Plaintiff to call his wife and drove him back to the Spokane Intermodal Center but by that time he had missed his connection. As there were no other buses, his wife had to drive 5 hours to pick him up.

//
//
//

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 2**

## Motion Standard

### 1. Fed. R. Civ. P. 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss a complaint if the court does not have jurisdiction over it. In reviewing a "facial" jurisdictional attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal. *Wolfe*, 392 F.3d at 362.

### 2. Fed. R. Civ. P. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or

unreasonable inferences." *In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## Federal Sovereign Immunity / Federal Tort Claim Act

Before the enactment of the Federal Tort Claim Act (FTCA), the immunity of the Government for negligent acts of its employees was absolute. The FTCA was passed in 1946, after nearly thirty years of consideration. *Dalehite v. United States*, 346 U.S. 15, 16 (1953). "It was the offspring of a feeling that the Government should assume the obligation to pay damages for the misfeasance of employees in carrying out its work." *Id.* at 24. While the FTCA sought to waive sovereign immunity for certain specified torts of federal employees, "[i]t did not assure injured persons damages for all injuries caused by such employees." *Id.* at 16.

The FTCA gives federal district courts subject matter jurisdiction over civil actions against the United States for money damages for injury or loss or property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment under circumstances in the United States, if a private person would be liable to the plaintiff in accordance with the law of the place where the challenged act or omission occurred. 28 U.S.C. § 1346(b) A further condition provides that the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

"The broad and just purpose which the statute was designed to effect was to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable and not to leave just treatment to the caprice and legislative burden of individual private laws." *Indian Towing Co. v. United States*, 350 U.S. 61, 68-69 (1955).

No action can lie "against the United States unless the legislature has authorized it" *Dalehite*, 345 U.S. at 30. Thus, before a court may exercise

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 4**

jurisdiction over any suit against the government, it must have "a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (citations omitted); *see also United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 923–24 (9th Cir. 2009) (discussing the relationship between sovereign immunity and subject matter jurisdiction). The government's waiver of sovereign immunity cannot be implied, but "must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

Here, if the WLAD imposes tort liability upon a private person for the wrongful conduct alleged in Plaintiff's complaint, the FTCA waives the United States' sovereign immunity. *Schwarder v. United States*, 974 F.2d 1118, 1122 (9th Cir. 1992) ("[T]he FTCA directs us to look to the law of the state in which the government official committed the tort to determine the scope of sovereign immunity. If the law of that state makes private parties liable. . . then the United States is liable for the same."). The effect of the FTCA is to waive immunity from "recognized causes of action and was not to visit the Government with novel and unprecedented liabilities." *Feres v. United States*, 340 U.S. 135, 141-42 (1950).

"The words "like circumstances" [in § 2674] do not restrict a court's inquiry to the *same circumstances*, but require it to look further afield." *United States v. Olson*, 546 U.S. 43, 46 (2005) (emphasis in original).

Plaintiff has the burden of establishing that his "action falls within an unequivocally expressed waiver of sovereign immunity by Congress." *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007).

### Analysis

**1.  Sovereign Immunity**

The first step in determining whether the WLAD imposes tort liability upon a private person for the wrongful conduct alleged in Plaintiff's complaint is to identify a reasonable private party analogy to the CBP's action. *Dugard v. United*

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 5**

*States*, 835 F.3d 915, 919 (2006). This is somewhat difficult given the CBP officers were performing a "uniquely governmental function." *See Olson*, 546 U.S. at 46. However, it is not impossible. Courts need "to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA 'in the performance of activities which private persons do not perform.'" *Id.* (citing *Indian Towing Co.*, 350 U.S. at 64). Although the federal government "could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy." *Dugard*, 835 F.3d at 919 (quotation omitted).

As illustrative, in *Dugard*, the plaintiff, Jaycee Dugard, sued the United States alleging that it had negligently performed numerous mandatory duties when supervising the person who had kidnapped and raped her over a period of 18 years, including its duty to report parole violations in the years prior to her kidnapping. *Id*. at 918. She argued that but for the United States' negligence, her capturer's parole would have been revoked and he would not have been able to kidnap her in 1991. *Id*. In concluding that the FTCA foreclosed federal liability in that case, the Circuit reasoned the most analogous case to the alleged situation involved the liability of private criminal rehabilitation facilities. *Id*. at 919. It then noted that under California law, private companies that operate rehabilitation programs do not owe a duty of care to the public at large for the conduct of inmates or parolees under their supervision. *Id*. Ultimately, it concluded that because a private individual in like circumstances would not be liable under California law, the United States cannot be held liable under the FTCA for the conduct of the parole officer. *Id*. at 921.

The United States urges this Court to skip the analogous conduct analysis and instead accept a blanket rule that the United States has not waived its sovereign immunity for state civil rights torts. It maintains that *Delta Savings Bank*

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 6**

*v. United States*, 265 F.3d 1017 (2001) is directly on point. The Court does not read *Delta Savings Bank* so expansively.

In that case, an individual sued the United States and alleged that agents of the United States discriminated against him because of his Asian descent when they appointed a conservator/receiver of a bank that was owned by mostly persons of Asian descent. *Id.* at 1019. He alleged a conspiracy among Office of Thrift Supervision ("OTS") employees that was motivated by their racial bias against the Asian ancestry of the bank's management. *Id.* at 1020. Despite an administrative review that was favorable to the plaintiff the OTS issued a Prohibition Order that forever banned the plaintiff from working in the American banking industry. *Id.* at 1020. That decision was appealed, and the prohibition order was vacated. *Id.*

The plaintiff then filed suit in federal court alleging causes of action for violations of 42 U.S.C. § 1985(3), 42 U.S.C. § 1986, and 28 U.S.C. § 1346(b) based on the failure of the OTS to prevent the race-based conspiracy of its employees. *Id.* The claims under § 1985(3) and § 1986 were dismissed because the United States had not waived its sovereign immunity. *Id.* The remaining FTCA was later dismissed. *Id.* at 1021.

Notably, in that case, the plaintiff attempted to incorporate 42 U.S.C. §§ 1985 and 1986 as state law causes of action. *Id.* at 1024. In doing so, the plaintiff argued that an FTCA claim can be brought for violations of federal statutes that provide private federal causes of actions, even if there is no analogous state law. *Id.* The Ninth Circuit rejected that attempt. *Id.* The plaintiff then attempted to argue that the conduct of the OTS officers violated some state law, relying on the general California civil rights law, the California Unruh Act and the Fair Employment and Housing Act. *Id.* at 1025.

The Ninth Circuit rejected the plaintiffs' arguments, noting that the Unruh Act has been limited to cases "where the plaintiff was in a relationship with the offending organization similar to that of the customer in the customer-proprietor

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 7**

relationship." *Id*. Notably, the Act specifically prohibits discrimination in the full and equal accommodations, advantages, facilities, privileges, or services *in all business establishments of every kind whatsoever. Id.* (emphasis added). The United States has not pointed to any case that specifically limits the WLAD to only those situations where the plaintiff was in a relationship with the offending organization.

Also, in that case the Ninth Circuit did not impose a blanket rule that the United States cannot be held liable for state law discrimination statutes under the Federal Tort Claim Act. Rather, it concluded that the cited California laws could not grant a party a cause of action against a private defendant who committed acts *like those allegedly committed by the United States in this case.*" *Id.* (emphasis added). Rather than support a blanket rule, *Delta Savings Bank* is consistent with Ninth Circuit precedent that requires courts to find analogous private-party conduct.

For his part, Plaintiff relies on *Xue Lu v. Powell*, 621 F.3d 944 (2010) and *Anderson v. United States*, 127 F.3d 1190 (9th Cir. 1997). In *Xue Lu*, an asylum officer sexually assaulted and demanded bribes from two female Chinese asylum seekers. 621 F.3d at 946. The plaintiffs in that case relied on the Federal Tort Claim Act to bring claims against the United States, relying on the theory of respondeat superior to ask for compensation for the asylum officer's infliction of emotional distress and interference with their civil rights. *Id.* at 949. The California statutes analyzed by the Ninth Circuit was Cal. Civ. Code 52.1, or the Tom Bane Civil Rights Act. *Id.* at 950. The Circuit noted that the California courts recognize a suit against a private employer under this statute. *Id.* (citing *Stamps v. Superior Court*, 136 Cal. App. 4th 1441 (2006)). Therefore, the plaintiff's claim based on respondeat superior could proceed under the FTCA. *Id.*

The *Anderson* case is a published case dealing with the question of attorney fees under the FTCA. 127 F.3d at 1191. In that case, the plaintiffs filed an action

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 8**

against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680 (1994), alleging the government was liable for negligent supervision and sexual harassment based on the WLAD. *Id.* The district court held a bench trial and awarded compensatory damages, attorneys fees and expenses to the plaintiffs. *Id.* The Circuit held that Congress has not waived the United States' sovereign immunity for attorneys' fees and expenses under the FTCA and vacated the judgment on fees and costs. *Id.* Notably, the district court's award of compensatory damages, which was not the subject to the appeal, was left undisturbed. *Id.*

Although it is true it appears both the district court and the Ninth Circuit accepted without question that the United States waived its sovereign immunity for the WLAD sexual harassment claim, that fact deserves more import than the United States is prepared to give. *See Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)) ("Courts have an independent obligation to determine whether subject matter jurisdiction exists, even when no party challenges it."); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004) (noting that not only is the Circuit obligated to consider sua sponte whether it has subject matter jurisdiction, but it must also satisfy itself that the lower court had jurisdiction in the case it is reviewing). It certainly is a reasonable inference that the Ninth Circuit, the district court, and even the United States, since it did not appeal the damages award, all believed that the United States waived its sovereign immunity with respect to WLAD discrimination claims.

On that same note, in the cases relied on by the United States, including the case from the Eastern District of Washington, no analysis or reasoning was provided by the court as to whether a private entity engaged in the same conduct would be held be liable under the WLAD. Many of these were being brought by *pro se* plaintiffs and it appears the United States' sovereign immunity claims were unchallenged in most cases.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 9**

If the Court had to pick whether the *Anderson* case or the district court cases answer the question as to whether the FTCA waives the United States' sovereign immunity for WLAD claims, the Court chooses *Anderson*. And this is supported by case law that recognizes that law enforcement and security guards can be liable under the WLAD for alleged discriminatory conduct in public places. *See Taylor v. City of Seattle*, 2018 WL 5024029 (W.D. Wash. 2018); *A.J. v. City of Bellingham*, 2018 WL 3390485 (W.D. Wash. 2018); *Turner v. City of Port Angeles*, 2010 WL 4286239 (W.D. Wash. 2010); *Demelash v. Ross Stores, Inc.*, 105 Wash. App. 508 (2001); *McKinney v. City of Tukwila*, 103 Wash. App 391 (2000).

More recently, the Washington Supreme Court held that an employer can be held liable for the discriminatory conduct of its employees. *See Floeting v. Grp. Health Cooperative*, 192 Wash.2d 848, 856 (2019). In *Floeting*, the plaintiff alleged that he was repeatedly sexually harassed by a Group Health employee during his regularly scheduled medical appointments. *Id.* at 851. The Washington Supreme Court held that under the plain language of WLAD, employers are directly liable for the sexual harassment of members of the public by their employees, just as they would be if their employees turned customers away because of their race, religion, or sexual orientation. *Id.* at 856.

Moreover, the Washington legislature has directed courts to liberally construe WLAD to eradicate discrimination, including discrimination in places of public accommodation. RCW § 49.60.010, .020; *see also Jin Zhu v. N. Cent. Educ. Serv. Dist.-ESD 171*, 189 Wash.2d 607 (2017) (quoting *Marquis v. City of Spokane*, 130 Wash.2d 97, 108 (1996)).

Under this reasoning, it is clear Washington courts would hold a security guard company liable for the discriminatory conduct of its security guards. For reasonable analogous private party conduct, the Court finds that a private security officer is the best fit to analyze whether the United States waived its sovereign

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 10**

immunity for Count 3 of the Complaint. Because the WLAD imposes tort liability upon a private person for the wrongful conduct alleged in Plaintiff's complaint, the FTCA waives the United States' sovereign immunity for Count 3.

### 2. Failure to State a Claim

The United States asks the Court to dismiss Count 3 for failure to state a claim, asserting that before a private entity can be liable under the WLAD public accommodation provision, the discrimination must be attributed to the place of public accommodation, that is, "a claim for discrimination in a place of accommodation can only be asserted *against the place of public accommodation*." ECF No. 5. (emphasis in original). The United States asserts that Plaintiff is asking the Court to find that all individuals who enter a place of public accommodation to be subject to the WLAD. Instead, it urges the Court to dismiss Claim 3 because the CBP agents who engaged in the alleged discrimination were not employees or agents of the Spokane Intermodal Center and the United States does not own, operate, or exercise control over the Spokane Intermodal Center.

The Court declines to read the WLAD as narrowly as the United States suggest. The facts alleged in the Complaint establish that the CBP officers did not just happen to show up at the Spokane Intermodal Center. Again, the security guard analogy is apt to show that the WLAD covers situations where federal officers enter places of accommodation and wield their power over individuals at places of accommodation. Under the plain language of the WLAD, the United States may be liable because the alleged CBP acts "directly or indirectly" caused Plaintiff "to be treated as not welcome, accepted, desired, or solicited" at the Spokane Intermodal Center based on his race, Wash. Rev. Code § 49.60.040(14), .030(1)(b), and/or "directly or indirectly result[ed] in . . . discrimination" against him at the Center based on his race. Wash. Rev. Code § 49.60.215.

At this stage of the proceedings, Plaintiff has stated a valid claim that can proceed beyond the pleading stage and into discovery.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 11**

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion to Dismiss, ECF No. 5, is **DENIED.**

**IT IS SO ORDERED.** The Clerk of Court is directed to enter this Order and forward copies to counsel.

**DATED** this 22nd day of November 2019.



_____
Stanley A. Bastian
United States District Judge