FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 17, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANDRES SOSA SEGURA,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | No. 2:19-CV-00219-SAB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Before the Court is Plaintiff's Motion for Partial Summary Judgment, ECF No. 64. A hearing on the motion was held by videoconference on November 12, 2020. Plaintiff was represented by Jennifer Chung. Lisa Nowlin, Arleen Fernandez, Aaron Korthuis, Matthew Adams, and Kenneth Payson participated by telephone. Defendants were represented by Derek Taylor and John Drake.

Plaintiff is suing the United States, alleging that two United States Customs and Border Protection (CBP) officers approached him at the bus station in Spokane, Washington and detained him without probable cause because he is Latino. He is bringing three claims under the Federal Torts Claim Act: (1) False Arrest; (2) False Imprisonment; and (3) violation of the Washington Law Against Discrimination Act. He now moves for partial summary judgment on his False Arrest claim.

//

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1**

Plaintiff concedes that "factual disputes prevent summary judgment as to whether the USA is liable for false arrest based on the CBP agents' reasonable suspicion or probable cause to believe Plaintiff was unlawfully present in the USA when the agents encountered him inside the bus terminal, then took him to the parking lot for further questioning." ECF No. 64. Instead, Plaintiff moves for summary judgment on his false arrest claim as a matter of law based on the Customs and Border Protection's decision to arrest him by placing him in a patrol vehicle and transporting him to the Colville station.

**Motion Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2**

weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### Background Facts

The following facts are viewed in the light most favorable to Defendant, the non-moving party.

On July 24, 2017, a Greyhound bus, arriving from Missoula, Montana, arrived at the Spokane Intermodal Center at 11:20 a.m. U.S. Border Patrol Agents Brian Flynn and Randall Roberts were standing outside the building in an area approximately 10 feet away from one of the entrances. Agents Flynn and Roberts observed passengers as they gathered their belongs and exited the bus. They saw Plaintiff look at them before he exited the bus. He looked furtively at the agents through the bus's windows. He continued to remain seated while other passengers, including those seated behind him, gathered their belongings and exited. When he did finally exit, Plaintiff "beelined" past Agents Roberts and Flynn into the terminal building.

Agent Roberts observed and took note of Plaintiff's behavior on the bus as he exited. His behavior piqued Agent Roberts' interest because it was inconsistent with the behavior of the other passengers, so he followed him into the terminal building. He approached Plaintiff and they exchanged greetings. Agent Roberts asked Plaintiff where he was from and he did not respond. Instead, he pulled out his wallet and handed Agent Roberts a Washington driver's license. The address listed on the wallet was in Underwood, Washington, which is about 280 miles away from Spokane.

Agent Roberts then asked Plaintiff where he was born. Plaintiff responded that he was from Mexico. Agent Roberts then asked Plaintiff if he had any immigration documents showing that he was lawfully present in the country, and Plaintiff responded, "No." Agent Roberts asked whether this meant that he had not

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 3**

been issued any immigration documents, or that he was not carrying them on his person at this time. Plaintiff again answered, "No." At this point, Plaintiff reached into his wallet and produced a "Know Your Rights" card.

Agent Roberts concluded he had reasonable suspicion to believe that Plaintiff was in the country illegally without permission in violation of 8 U.S.C. § 1182. The agents decided to detain Plaintiff and they frisked him for weapons. They discovered an electronic monitoring bracelet around Plaintiff's ankle. Agent Roberts had never encountered someone with an ankle bracelet before while conducting transportation checks. He could not tell why Plaintiff was wearing it, although he suspected that it was because he had been convicted of a crime or violated a term of probation. He asked Plaintiff why he was wearing the ankle bracelet and Plaintiff did not answer.

Agent Flynn then called the Border Patrol dispatch operator. He asked the operator to run a records check using the name and date of birth on Plaintiff's driver's license. The operator ran an "ATS-L Superquery," which is a standard record check. An ATS-L Superquery search provides limited information about a person's immigration history and criminal history using the person's name and date of birth as the only search inputs. An ATS-L Superquery search cannot provide a comprehensive picture of a subject's immigration history. The only means of obtaining a comprehensive, completely reliable picture is to run searches through separate, more specialized databases using the subject's fingerprints. The agents did not have a fingerprint scanner at the Spokane Intermodal Center.

The records check run by the dispatch operator revealed that Plaintiff: (1) was born in Mexico; (2) was a citizen of Mexico; (3) did not have a current visa; (4) had been issued an alien registration number ("A-number"); (5) had been issued an FBI number; and (6) had been arrested by U.S. Immigration and Customs Enforcement ("ICE") on October 6, 2016, and charged with being an alien unlawfully present in the country. There was nothing else provided. Nothing

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4**

indicated that Plaintiff was out on immigration bond.

The operator suggested that the ankle monitor might be related to the October 2016 ICE arrest. Based on his experience, Agent Flynn doubted that explanation. The operator emailed the results of the database search to Agent Flynn, but he did not have access to his email account from the field.[1] Agents Roberts and Flynn concluded they had probable cause to arrest Plaintiff for being a non-citizen present in the United States without permission. They also believed that Plaintiff was likely to escape before a warrant could be obtained for his arrest. They believed that Plaintiff would leave the Spokane area before they could get a warrant.

Agents Flynn and Roberts then transported Plaintiff to the Colville Border Patrol Station in Colville, Washington. Upon arriving at the Colville Station, Agents Flynn and Roberts began running additional database searches using Plaintiff's fingerprints. These additional searches revealed that Plaintiff had an active immigration case and had been released from custody while the case was pending. Agents Flynn and Roberts told their supervisor this, who then called the ICE officer assigned to Plaintiff's case. The ICE officer confirmed that Plaintiff had been released from immigration detention and told the supervisor that Plaintiff could be released if he had not committed any new criminal violations. Plaintiff was then released and transported back to the Spokane Intermodal Center. At least four hours elapsed between Mr. Sosa's initial encounter with Agents Roberts and Flynn at the Intermodal Center and Mr. Sosa's return to the Intermodal Center.

---

[1] Although Agent Flynn conducted a records check via Radio Sector Dispatch while still at the Intermodal Center, the I-44, which is the official arrest record filled out by the arresting agent, does not document this records check. Instead, the I-44 states that a record check later occurred at the Colville Border Patrol station, and that this record check revealed that "SOSA is out on bond from ICE/ERO."

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 5**

Agents Flynn and Roberts were both asked at their depositions whether they considered Plaintiff a "flight risk." Based on their understanding of that term and the context in which the question was asked, both agents understood the question to be focusing on whether Plaintiff was likely to flee (run away) during a 10 to 15 minute period before they placed him under arrest. Because the Agents did not observe any signs that Plaintiff might flee during that period, they both answered that Plaintiff was not a "flight risk."

### Applicable Law

Plaintiff is proceeding under the Federal Tort Claim Act (FTCA). The FTCA gives federal district courts subject matter jurisdiction over civil actions against the United States for money damages for injury or loss or property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment under circumstances in the United States if a private person would be liable to the plaintiff in accordance with the law of the place where the challenged act or omission occurred. 28 U.S.C. § 1346(b). 28 U.S.C. § 2674 waives the sovereign immunity of the United States and renders it liable for the torts described in the FTCA "in the same manner and to the same extent as a private individual under like circumstances." Although the FTCA contains an exception to its waiver of sovereign immunity for false arrest and false imprisonment claims, that exception does not apply where such claims arise out of the acts or omissions of investigative or law enforcement officers of the United States. 28 U.S.C. § 2680(h).

### Analysis

Here, questions of material fact surrounding the arrest and transporting of Plaintiff to the CBP's Colville station prevent the Court from granting Plaintiff's motion. The credibility of Plaintiff and the CBP officers are at the heart of all of Plaintiff's claims. These credibility determinations can only be made after observing and hearing the witnesses at trial.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 6**

Whether the Court should look to federal law to determine whether the CBP officers committed the tort of false arrest, however, remains to be determined. The Ninth Circuit has instructed that for FTCA claims, courts must apply the law the state courts would apply in the analogous tort action. *Rhoden v. United States*, 55 F.3d 428, 431 (9th Cir. 1995).[2]

Washington has no statute concerning citizen arrests. *State v. Gonzales*, 24 Wash. App. 437, 439 (1979). Under Washington law, a private person can conduct a citizen's arrest for a misdemeanor if the misdemeanor: (1) was committed in the citizen's presence and (2) constituted a breach of the peace. *Id*

Under Washington law, an officer has a qualified immunity from liability for false arrest when the officer (1) carried out a statutory duty; (2) according to procedures dictated to him by statute and superiors; and (3) acted reasonably. *Staats v. Brown*, 139 Wash.2d 757, 779 (2000). The *Staats* Court noted that "[a]n officer does not fulfil his statutory duty by violating it." *Id.* It also noted that an arrest that amounts to a statutory violation cannot be reasonable. *Id.*

In determining the substantive standards to apply to Plaintiff's false arrest claim, the Court will follow the Ninth Circuit's reasoning in *Avina v. United*

---

[2] Defendant suggests that *Rhoden v. United States*, 55 F.3d 428 (9th Cir. 1995) is no longer good law, citing to *Tekle v United States*, 511 F.3d 839 (9th Cir. 2007). *Tekle* was not a majority opinion as to the FTCA issue. *See Liranzo v. United States*, 690 F.3d 78, 95 n.18 (2nd Cir. 2012); *see also Villafranca v. United States*, 587 F.3d 257, 262 n.4 (5th Cir. 2009). Notably, in *Tekle*, Judge Tashima wrote that courts were required to hold IRS officers to the same standards as a private person executing a citizen's arrest. 511 F.3d at 850-54. However, in *Avina v. United States*, 681 F.3d 1127 (9th Cir. 2012), the Ninth Circuit cited to *Tekle*, but applied the law enforcement privilege to the plaintiff's FTCA claims, seemingly rejecting Judge Tashima's conclusion.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7**

*States*, 681 F.3d 1127, 1131 (9th Cir. 2012), and will apply Washington law pertaining to an arrest made by a law enforcement officer. Thus, the Court will need to determine whether the officers were carrying out their statutory duty according to the procedures dictated to them by statute and superiors and whether their actions were reasonable. Questions of material fact prevent the Court from doing so at this stage of the proceedings.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, ECF No. 64, is **DENIED**.

2.    Plaintiff's Motion to Seal, ECF No. 67, is **GRANTED**.

3.    Defendant's Motion to File Sur-reply, ECF No. 86, is **GRANTED**.

**IT IS SO ORDERED**. The Clerk of Court is directed to enter this Order and forward copies to counsel.

**DATED** this 16th day of November 2020.



Stanley A. Bastian
United States District Judge

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8**